**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **WILLIAM R. RENNAKER, Individually and On Behalf of All Others Similarly Situated,** ***Plaintiffs*,** | § | |
| **v.** | § | **MO:25-CV-00234-DC-RCG** |
| **COAST 2 COAST LOGISTICS, INC.,** ***Defendant*.** | § | |

**REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE**

BEFORE THE COURT is Plaintiffs William R. Rennaker and Derek Hudepohl's Motion for Default Judgment against Coast 2 Coast Logistics, Inc. (Doc. 15). This case is before the Court through a Standing Order pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration, the Court **RECOMMENDS** that Plaintiffs' William R. Rennaker and Derek Hudepohl's Motion for Default Judgment be **GRANTED**. (Doc. 15).

## I. BACKGROUND

On May 19, 2025, Plaintiff William R. Rennaker ("Plaintiff Rennaker") filed his Original Complaint on his own behalf and asserted collective claims under the Fair Labor Standards Act, seeking to represent other similarly situated employees of Coast 2 Coast Logistics, Inc. ("Defendant"). (Doc. 1). That same day, Plaintiff Derek Hudepohl ("Plaintiff Hudepohl") filed a consent to join and "opted in" as a party plaintiff. (Doc. 5). Although Eric Takahashi initially filed a consent to join, he later withdrew it (Docs. 6, 13), leaving only Plaintiff Rennaker and Plaintiff Hudepohl (collectively, "Plaintiffs") as Plaintiffs in this action.

Plaintiffs allege Defendant provides frac sand hauling services and employed Plaintiff Rennaker as a nonexempt Sand Coordinator from approximately April 1, 2024, through October

18, 2024, primarily at well sites in Texas and New Mexico. During this period, Plaintiff Rennaker regularly worked more than forty hours per week. (Doc. 1 at 3–4). Plaintiffs contend Defendant does business within the territorial jurisdiction of this Court and is subject to the requirements of the FLSA. *Id.* at 3–5.

According to Plaintiffs, Defendant paid Sand Coordinators and other drivers on a day-rate basis, required them to "clock in" and "clock out" via WhatsApp messages to a supervisor, and failed to pay them "at a rate not less than one and one-half times the regular rate at which they [were] employed" for hours worked over forty in a workweek, in violation of 29 U.S.C. § 207(a)(1). *Id.* at 4–6. Plaintiffs further allege Defendant failed to maintain accurate time and pay records, failed to post the required FLSA notices, and continued its pay practices after being put on notice that they violated the FLSA, thereby willfully violating the statute. *Id.* at 2, 5–6, 8. Plaintiffs seek to proceed collectively under 29 U.S.C. § 216(b) on behalf of all Sand Coordinators and other day-rate workers employed by Defendant in Texas and New Mexico during the relevant period who regularly worked more than forty hours per week without receiving the required overtime premium. *Id.* at 6.

Defendant was served on May 23, 2025. (Doc. 9). To date, Defendant has failed to answer Plaintiffs' Complaint or otherwise make an appearance in this lawsuit. On September 10, 2025, Plaintiffs filed a Motion for Clerk's Entry of Default. (Doc. 11). On September 11, 2025, the Clerk of Court made an entry of default against Defendant. (Doc. 12). On June 2, 2026, Plaintiffs filed the instant Motion for Default Judgment. (Doc. 15).

By their Motion, Plaintiffs seek an award of back wages, liquidated damages, and reasonable attorney fees and costs. (Doc. 15). *Id.* Specifically, Plaintiffs seek an award of: (1)$33,386.86 for Plaintiff Rennaker's total unpaid overtime wages and liquidated damages;

(2) $24,780.00 for Plaintiff Hudepohl's total unpaid overtime wages and liquidated damages; (3) attorney fees of $16,250.00; (4) and costs of $520.00, for a total damages award of $74,936.86. (Docs. 15; 15-12; 15-13). A hearing was held on the instant Motion for Default Judgment on July 16, 2026. (*See* Doc. 18). Accordingly, this matter is now ready for disposition.

## II. Legal Standard

After entry of default and upon a motion by the plaintiff, Federal Rule of Civil Procedure 55 authorizes the Court to enter a default judgment against a defendant who fails to plead or otherwise defend the suit. Fed. R. Civ. P. 55(b). However, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Savs. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). Accordingly, "[a] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Instead, the district court "has the discretion to decline to enter a default judgment." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

In determining whether to enter a default judgment, courts utilize a three-part test. *See United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008). First, the Court considers whether the entry of default judgment is procedurally warranted. *Id*. The factors relevant to this inquiry include:

> (1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893. Second, the court assesses the substantive merits of the plaintiff's claims, determining whether the plaintiff set forth sufficient facts to establish his entitlement to

relief. *See 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d at 384. In doing so, courts assume that, due to its default, the defendant admits all well-pleaded facts in the plaintiff's complaint. *See Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

Third, the court determines what form of relief, if any, the plaintiff should receive in the case. *Id.*; *1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d at 384. Generally, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

## III. Discussion

Applying the three-part analysis detailed above, the Court finds Plaintiff is entitled to a default judgment against Defendant.

### A. Default Judgment is Procedurally Warranted

In light of the six *Lindsey* factors enumerated above, the Court finds that default judgment is procedurally warranted. First, Defendant has not filed any responsive pleadings or otherwise appeared in this case. Consequently, there are no material facts in dispute. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact."). Second, the Defendant's total failure to respond has brought the adversarial process to a halt, effectively prejudicing Plaintiff's interests. *Lindsey*, 161 F.3d at 893. Third, the grounds for default are "clearly established" since over the course of this case, Defendant has not responded to the summons and Complaint, the Entry of Default, or Plaintiff's Motion for Default Judgment. *See J.D. Holdings, LLC v. BD Ventures, LLC*, 766 F. Supp. 2d 109, 113 (D.D.C. 2011) (finding that default judgment is

appropriate if defendants are totally unresponsive and the failure to respond is plainly willful, as reflected by the parties' failure to respond either to the summons and complaint, the entry of default, or the motion for default judgment).

Fourth, there is no evidence before the Court indicating that Defendant's silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Fifth, Defendant has had more than a year to retain counsel in order to respond to Plaintiff's claims or otherwise appear in and litigate this matter. Consequently, any purported harshness of a default judgment is mitigated by Defendant's inaction for this lengthy time period. *United States v. Rod Riordan Inc.*, No. MO:17-CV-071-DC, 2018 WL 2392559, at *3 (W.D. Tex. May 25, 2018). Finally, the Court is not aware of any facts that give rise to "good cause" to set aside the default if challenged by Defendant. *Lindsey*, 161 F.3d at 893. Therefore, the Court finds that default judgment is procedurally warranted under these circumstances.

**B. Default Judgment is Substantively Warranted**

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The FLSA mandates minimum wage and overtime compensation for employees who are (1) "engaged in commerce or in the production of goods for commerce" ("individual coverage") or (2) "employed in an enterprise engaged in commerce or in the production of goods for commerce" ("enterprise coverage"). *Ramos v. HT Elecs., LLC*, No. 18-CV-430, 2018 WL 6040257, at *2 (W.D. Tex. Nov. 19, 2018) (citing 29 U.S.C. §§ 206(a), 207(a)). A plaintiff may invoke the FLSA under either individual or enterprise coverage. *Id.* (citing *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992)).

"To adequately plead individual coverage under the FLSA, plaintiffs must allege that, at times relevant to their claim, they were 'engaged in commerce or in the production of goods for commerce.'" *Shorts v. Primeco Auto Towing, LLC*, No. CIV.A. H-13-2794, 2014 WL 3670004, at *2 (S.D. Tex. July 22, 2014) (quoting 29 U.S.C. § 207(a)(2)(C)). "Work that is purely local in nature does not meet the FLSA's requirements, but any regular contact with commerce, no matter how small, will result in coverage." *Ako v. Arriva Best Sec., Inc.*, No. 22-CV-1751, 2023 WL 7752309, at *5 (N.D. Tex. Oct. 5, 2023) (quoting *Williams v. Henagan*, 595 F.3d 610, 621 (5th Cir. 2010)).

Here, Plaintiffs have sufficiently alleged FLSA coverage. Plaintiffs allege Defendant provides frac sand hauling services, employed Plaintiffs as Sand Coordinators, and required Plaintiffs to work throughout Texas and New Mexico while regularly working more than forty hours per week without receiving overtime compensation. (Doc. 1 at 4). Plaintiffs further allege Defendant paid them on a day-rate basis regardless of the number of hours worked. *Id.* at 4, 8. Accepting these well-pleaded allegations as true, the Court concludes Plaintiffs have adequately alleged they were engaged in interstate commerce for purposes of individual coverage under the FLSA. Moreover, the allegations regarding Defendant's interstate frac sand hauling further support application of the FLSA.

Once coverage has been established, an employee must demonstrate by a preponderance of the evidence that: (1) "there existed an employer-employee relationship during the unpaid overtime periods claimed"; (2) "that the employer violated the FLSA's overtime wage requirements"; and (3) "the amount of overtime compensation due." *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014). After the employee establishes a *prima facie* case, the burden shifts to the employer to "come forward with evidence of the

precise amount of work performed or with evidence to [negate] the reasonableness of the inference to be drawn from the employee's evidence." *Id.* (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946)). "If the employer fails to produce such evidence, the court may then award damages to the employee even though the result may only be approximate." *Harvill v. Westward Commc'ns, LLC.*, 433 F.3d 428, 441 (5th Cir. 2005).

Plaintiffs have established they had an employment relationship with Defendant during the time period relevant to this suit. Under the FLSA, an employee is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). An employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Id.* at § 203(d). The term "employer" has been broadly interpreted and may include one or more joint employers depending on the nature of the relationship between the employers. *Ramos*, 2018 WL 6040257, at *3 (citing *Falk v. Brennan*, 414 U.S. 190, 195 (1973) and 29 C.F.R. 791.2(a) (1961)).

Plaintiffs allege Defendant employed Rennaker from approximately April 2024 through October 2024 and Hudepohl from approximately May 2024 through October 2024 as Sand Coordinators. (Docs. 1 at 4; 15; 15-10; 15-11). Plaintiffs further allege Defendant paid them on a day-rate basis and required them to report their work hours by messaging their supervisor through WhatsApp when arriving at and leaving the worksite. (Doc. 1 at 4). Plaintiffs' sworn declarations are consistent with these allegations. (Docs. 15-10, 15-11). The Court finds these allegations sufficient to establish an employer-employee relationship between Plaintiffs and Defendant.

Plaintiffs' Complaint also establishes Defendant failed to pay overtime compensation required by the FLSA. (Doc. 1 at 5). Plaintiffs allege they were non-exempt employees whose primary duties as Sand Coordinators were nonexempt, were not directly related to Defendant's

management or general business operations, did not require the exercise of discretion and independent judgment on matters of significance, and instead required them to follow Defendant's policies and procedures. *Id.* at 4–5. Plaintiffs further allege Defendant paid them a flat day rate regardless of the number of hours worked and failed to compensate them at one and one-half times their regular rate for hours worked in excess of forty each workweek. *Id.* at 5–6. The Court finds these allegations sufficient to establish a violation of the FLSA's overtime provisions.

Plaintiffs not only allege they routinely worked more than forty hours each workweek, but each Plaintiff also submitted a declaration detailing his compensation, hours worked, and overtime wages owed. (Docs. 15-10, 15-11). Rennaker attests Defendant paid him $320.00 per day, he typically worked twelve hours per day, seven days per week, and Defendant paid only straight time for his overtime hours. (Doc. 15-10). Based on his rate of pay and hours worked, Rennaker calculates Defendant owes him $16,693.43 in unpaid overtime wages. *Id.* Rennaker also provides a detailed spreadsheet summarizing the overtime hours worked and wages owed. *Id.* Hudepohl similarly attests Defendant paid him $315.00 per day, he typically worked twelve hours per day, seven days per week, and Defendant paid only straight time for overtime hours worked. (Doc. 15-11). Based on his rate of pay and hours worked, Hudepohl calculates Defendant owes him $12,390.00 in unpaid overtime wages and provides a detailed spreadsheet supporting those calculations. *Id.*

The claims Plaintiffs make in the Complaint, Motion for Default Judgment, exhibits attached to the Motion for Default Judgment, as well as exhibits admitted during the default judgment hearing state a claim for unpaid overtime wages under the FLSA. Therefore, a default judgment is substantively warranted.

**C. Plaintiff's Right to Relief**

As previously stated, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp.*, 605 F.2d at 857. On July 16, 2026, pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court held an evidentiary hearing covering the issue of damages. (*See* Doc. 18). Plaintiffs also submitted sworn declarations detailing their hours worked, rates of pay, overtime calculations, and damages, together with supporting spreadsheets. (Docs. 15-10, 15-11). Additionally, Plaintiffs' Counsel attached both a damage calculation and an affidavit regarding attorney fees and costs to their Motion for Default Judgment from which this Court may calculate damages. (Docs. 15, 15-12).

**1. Overtime Wages**

Plaintiffs claim Defendant owes Rennaker $16,693.43 and Hudepohl $12,390.00 in unpaid overtime wages. (Docs. 1, 15, 15-10, 15-11). Rennaker attests Defendant employed him as a Sand Coordinator from approximately April 2024 through October 2024, paid him a day rate of $320.00, and required him to work approximately eighty-four hours each week. Rennaker further attests Defendant paid only straight time for overtime hours worked and calculates Defendant owes him $16,693.43 in unpaid overtime wages. (Docs. 1, 15, 15-10). Rennaker's declaration includes a detailed spreadsheet supporting his calculations. (Doc. 15-10).

Hudepohl similarly attests Defendant employed him as a Sand Coordinator from approximately May 2024 through October 2024, paid him a day rate of $315.00, and required him to work approximately eighty-four hours each week. (Docs. 1, 15, 15-11). Hudepohl further

attests Defendant paid only straight time for overtime hours worked and calculates Defendant owes him $12,390.00 in unpaid overtime wages. (Docs. 15, 15-11). Hudepohl likewise submitted a detailed spreadsheet supporting his calculations. (Doc. 15-11). Accordingly, Plaintiff Rennaker should be awarded $16,693.43 and Plaintiff Hudepohl should be awarded $12,390.00in unpaid overtime wages.

**2. Liquidated Damages**

Under the FLSA, if an employee is entitled to recover back pay for overtime wages, the employee is usually entitled to an additional equal amount as liquidated damages. *See* 29 U.S.C. § 216(b). A liquidated damages award is mandatory unless "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260. Here, because of Defendant's failure to participate in this case, it has failed to meet its burden to show good faith. Thus, Plaintiff Rennaker should be awarded $16,693.43 and Plaintiff Hudepohl should be awarded $12,390.00 in liquidated damages.

**3. Attorney Fees and Costs**

Finally, Plaintiffs' Counsel, Curt Hesse and Melissa Moore of Moore & Associates, seek attorney fees in the amount of $16,693.43. (Doc. 15-12 at 2). Under the FLSA, a prevailing plaintiff is entitled to a mandatory award of reasonable attorney fees and costs. 29 U.S.C. §216(b). In the Fifth Circuit, courts apply a two-step method for determining a reasonable attorney fee award. *Combs v. City of Huntington*, 829 F.3d 388, 391 (5th Cir. 2016). First, a court must calculate the "lodestar" amount, which is equal to the number of hours reasonably expended on the case multiplied by the hourly rate in the community for similar work. *Id.* at 392. In performing this calculation, the Court excludes any time that is excessive, duplicative,

unnecessary, or inadequately documented. *Id.*; *see also Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The party seeking reimbursement of attorney fees bears the burden to provide sufficient evidence that is adequate for the Court to determine reasonable hours expended. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 325 (5th Cir. 1995).

However, once the Court determines the lodestar, it may enhance or decrease the amount of attorney fees based on the relative weights of the twelve "*Johnson* factors." *Serna v. Law Office of Joseph Onwuteaka, P.C.*, 614 F. App'x 146, 157 (5th Cir. 2015); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87 (1989). The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. 448 F.2d at 717–19. Notably, "[a] strong presumption exists that the lodestar represents a reasonable fee that should be modified only in exceptional circumstances." *Payne v. Univ. of S. Miss.*, 681 F. App'x 384, 390 (5th Cir. 2017) (quoting *Pembroke v. Wood Cty.*, 16 F.3d 1214 (5th Cir. 1994)).

The time records attached to Ms. Moore's declaration indicate the hours expended litigating this case are well grounded and justified. (Doc. 15-12). According to Ms. Moore's declaration, she and her associate, Curt Hesse, each bill at an hourly rate of $650.00. *Id.* The Court finds these hourly rates are reasonable for attorneys practicing in this field with

comparable experience and skill. Ms. Moore further attests Moore & Associates maintains contemporaneous time records for all work performed in connection with this case and that she has reviewed those records in preparing her affidavit. *Id.* Based on the applicable factors and her review of the billing records, Ms. Moore opines that $16,250.00 constitutes a reasonable and necessary attorneys' fee. The Court finds the hours expended and the resulting fee are reasonable. Accordingly, Plaintiff should be awarded $16,250.00 in reasonable attorneys' fees.

Finally, Plaintiff seeks recovery of costs incurred in this matter. Ms. Moore attests Moore & Associates maintains records of all costs and that she has reviewed those records. *Id.* The Court finds these costs are reasonable. Therefore, Plaintiff should be awarded $520.00 in costs from Defendant.

## IV. RECOMMENDATION

For the aforementioned reasons, it is **RECOMMENDED** that Plaintiff's Motion for Default Judgment be **GRANTED**. (Doc. 15).

It is **FURTHER RECOMMENDED** that Plaintiff William R. Rennaker recover from Defendant Coast 2 Coast Logistics, Inc. the amount of Thirty Three Thousand Three Hundred Eighty Six and 86/100 Dollars ($33,386.86), which includes, in equal parts, unpaid overtime wages in the amount Sixteen Thousand Six Hundred Ninety Three and 43/100 Dollars ($16,693.43) and liquidated damages in the amount of Sixteen Thousand Six Hundred Ninety ($16,693.43), in accordance with 29 U.S.C. § 216(b).

It is **FURTHER RECOMMENDED** that Plaintiff Derek Hudepohl recover from Defendant Coast 2 Coast Logistics, Inc. the amount of Twenty Four Thousand Seven Hundred Eighty and 00/100 Dollars ($24,780.00), which includes, in equal parts, unpaid overtime wages in the amount of Twelve Thousand Three Hundred Ninety and 00/100 Dollars ($12,390.00) and

liquidated damages in the amount of Twelve Thousand Three Hundred Ninety and 00/100 Dollars ($12,390.00), in accordance with 29 U.S.C. § 216(b).

It is **FURTHER RECOMMENDED t**hat Plaintiffs be awarded Sixteen Thousand Two Hundred Fifty and 00/100 Dollars ($16,250.00) in attorney's fees and Five Hundred Twenty and 00/100 Dollars ($520.00) in costs.

SIGNED this 20th day of July, 2026.

RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE